**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARVIN PACE,

        Plaintiff,

v.                                  Case No. 3:25-cv-253-WWB-PDB

WARDEN TRAVIS LAMB, et al.,

        Defendants.

_____

## ORDER

THIS CAUSE is before the Court on Defendants Lamb, Watson, Grubbs, Bailey, Crow,[1] Mattox, Jenkins, and Wiggins's Motion to Dismiss (Doc. 41) and Defendants Wood, Parker,[2] and Barton's Motion to Dismiss (Doc. 54).  Plaintiff, proceeding pro se, filed Responses partially opposing both Motions (Doc. Nos. 53, 60).  For the reasons set forth below, the Motions will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff, a wheelchair-bound inmate of the Florida Department of Corrections ("**FDC**"), is proceeding on an Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 35).  He sues eleven Defendants, both in their individual and official capacities, based on conduct that occurred at Union Correctional Institution ("**UCI**").  (*See* Doc. 35 at 2–5).  Plaintiff's various claims stem from two alleged use-of-force incidents

---

[1] Plaintiff identifies this Defendant by the last name "Crew," (*see* Doc. 35 at 4), but defense counsel identifies this Defendant as "Crow," (*see* Doc. 13 at 1; *see also* Doc. 41 at 1).

[2] This Defendant's last name is spelled "Parkers" on the docket.

that occurred on March 3, 2022. (*Id.* at 14–15). He alleges that Defendants Watson, Bailey, Jenkins, and Crow "brutal[ly] attacked" him inside his cell and, afterward, left him lying on his cell floor in handcuffs. (*Id.*). Plaintiff yelled for help, and Defendant Grubbs assembled a five-man cell extraction team ("**CET**") to get Plaintiff into his wheelchair and out of his cell. (*Id.* at 15–16). The CET consisted of Defendants Wiggins, Mattox, Wood, Parker, and Barton. (*Id.* at 4–5, 16). Plaintiff alleges all members of the CET used excessive force against him while he was defenseless and in "severe medical distress." (*Id.* at 16–17). He alleges Defendants Bailey, Watson, and Grubbs were present but failed to intervene. (*Id.* at 17).

Plaintiff claims Defendants involved in the use-of-force incidents violated his rights under the Eighth and Fourteenth Amendments and Florida state law. (*Id.* at 3, 9–11). In addition, he alleges Defendants Watson and Bailey violated his rights under the First Amendment by retaliating against him either for filing a grievance (Defendant Watson) or a lawsuit (Defendant Bailey). (*Id.* at 9, 12–13). Finally, Plaintiff alleges Defendant Lamb (the Warden of UCI) failed to protect him from Defendant Watson after Plaintiff filed an emergency grievance complaining that Watson had threatened him on February 25, 2022. (*Id.* at 9, 13). As relief, Plaintiff seeks compensatory and punitive damages, the "imprisonment of all officials involved," and a "permanent stay away order." (*Id.* at 12).

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In

2

determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   DISCUSSION

In both Motions, Defendants seek dismissal of some claims and requests for relief: the official-capacity tort claims under Florida law; the official-capacity § 1983 claims for damages; the requests for a stay-away order and the filing of criminal charges against Defendants; and the request for punitive damages. (*See* Doc. 41 at 1; Doc. 54 at 1). In addition to these legal arguments, Defendants Watson and Bailey seek dismissal of the First Amendment retaliation claims against them, and Defendant Lamb seeks dismissal of the Eighth Amendment deliberate indifference claim against him. (*See* Doc. 41 at 1, 6–9).

In his Responses, Plaintiff agrees to dismiss his request for a "permanent stay away order" and all official-capacity claims except those against Defendant Lamb. (*See*

3

Doc. 53 at 2–3, 12–15; Doc. 60 at 1). Accordingly, Defendants' Motions will be granted insofar as Plaintiff's request for a stay-away order will be dismissed, as will the official-capacity claims (both under § 1983 and state law) against Defendants Bailey, Watson, Grubbs, Crow, Jenkins, Wiggins, Mattox, Wood, Parker, and Barton.

### A. Official-Capacity Tort Claim Against Defendant Lamb

Even though Defendant Lamb (as Warden) is an agency head, the state tort claim against him in his official capacity will be dismissed because Plaintiff alleges the Defendants who attacked him did so "in bad faith or with malicious purpose." *See* Fla. Stat. § 768.28(9)(a); *see also Dixon v. Scott*, 380 So. 3d 1247, 1248 (Fla. 1st DCA 2024) ("The state is immune from tort claims that are based on an employee acting in bad faith or with a malicious purpose.").

### B. Deliberate Indifference Claims Against Defendant Lamb

Plaintiff suggests his official- and individual-capacity deliberate indifference claims against Defendant Lamb should not be dismissed because Lamb (1) can be held "vicariously liable" for the excessive force by his subordinates, (2) violated his general obligation to protect inmates, and (3) failed to protect Plaintiff after Plaintiff notified Lamb of Defendant Watson's threat through an emergency grievance. (*See* Doc. 53 at 13–14 (citing *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010); *Valdes v. Crosby*, 450 F.3d 1231 (11th Cir. 2006); *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993))). Plaintiff's theory of liability against Defendant Lamb is not cognizable under § 1983 for two reasons. First, when a plaintiff sues a state actor in his official capacity for damages, "the action is in essence one for the recovery of money from the state." *Zatler v.*

4

*Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).  As such, "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."  *Id.* (finding the Secretary of the FDC was immune from suit in his official capacity).

Second, to the extent Plaintiff pursues an individual-capacity claim against Defendant Lamb, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  A claim against a supervisor may proceed only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."  *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  The mere filing of a grievance does not demonstrate the requisite causal connection.  *Jones v. Eckloff*, No. 2:12-cv-375-FtM, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009))).

A supervisor can be liable for an inmate attack if the supervisor had a custom or policy of deliberate indifference to "longstanding and widespread" violence against inmates.  *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025) (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)).  But "[t]his threshold is high": it requires a plaintiff to show that the supervisor "knew about 'multiple incidents or multiple reports of

5

prior misconduct by a particular employee.'" *Id.* (quoting *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019)).

Plaintiff does not allege Defendant Lamb was aware of a history of widespread abuse by officers against inmates; rather, he complains about a seemingly isolated incident. Thus, the cases on which he relies are inapposite. *See Danley*, 540 F.3d at 1315 (holding the plaintiff sufficiently alleged supervisors were on notice that corrections officers "regularly used pepper spray excessively as a means of punishment"); *Valdes*, 450 F.3d at 1235, 1243–44 (holding the district court properly denied the warden's motion for summary judgment on qualified immunity grounds because there was evidence the warden was aware that "inmate abuse at the hands of guards . . . occurred with sufficient regularity as to demonstrate a history of widespread abuse at [the prison]"); *LaMarca*, 995 F.2d at 1536–37 (holding the evidence permitted the reasonable inference the superintendent of the prison "knew that an unreasonable risk of violence existed at [the prison]").

Moreover, Plaintiff's emergency grievance does not demonstrate the requisite causal connection. According to the grievance records Plaintiff provided with his original Complaint (Doc. 1-1), Plaintiff submitted an emergency grievance complaining that Defendant Watson threatened to "dump" him out of his wheelchair. (*See* Doc. 1-1 at 16). Defendant Lamb responded to the grievance, advising that the grievance was not accepted as an "emergency" under the Florida Administrative Code because Plaintiff had not grieved a matter that "if disposed of according to the regular time frames, would subject [him] to substantial risk of personal injury or cause other serious and irreparable harm." (*Id.* at 17).

6

Even if Defendant Lamb inadvisedly concluded Plaintiff's grievance was not an emergency, or did not follow prison policy in handling or responding to Plaintiff's grievance, such failures are not constitutional violations.  *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."); *see also Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (holding prison regulations are not intended to confer rights or benefits on inmates but are designed to guide correctional officials in the administration of prisons).

For the reasons stated, Plaintiff's deliberate indifference claim against Defendant Lamb will be dismissed.

## C. Retaliation Claims

Defendants Watson and Bailey argue Plaintiff fails to state a plausible retaliation claim against them.  (*See* Doc. 41 at 6–7).  To state an actionable claim for retaliation, an inmate must allege:

> (1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech [the grievance].

*O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (second and fourth alterations in original).

Defendants concede Plaintiff alleges facts that, accepted as true, satisfy the first two elements, but argue Plaintiff fails to allege facts demonstrating causation.  (*See* Doc. 41 at 7–8).  As to Defendant Watson, Defendants note that Plaintiff's own allegations belie a causal connection between Plaintiff's protected speech (his emergency grievance)

7

and the alleged adverse action.  (*Id.* at 7).  In the emergency grievance Plaintiff filed on February 28, 2022, he complained that, on February 25, 2022, Defendant Watson threatened to "dump" him out of his wheelchair.  (*See* Doc. 1-1 at 16).  According to Defendants, the timing of the alleged attack (March 3, 2022) in relation to when Defendant Watson allegedly threatened Plaintiff (February 25, 2022), and when Plaintiff filed the grievance (February 28, 2022), shows that "Defendant Watson intended to use force against Plaintiff without regard to his . . . emergency grievance."  (Doc. 41 at 6).  Although correct that Plaintiff alleges Defendant Watson threatened to harm him before he submitted the emergency grievance, liberally construing Plaintiff's allegations, the inference can be drawn that Defendant Watson carried through on the earlier threat because Plaintiff filed a grievance, especially given the temporal proximity between the filing of the grievance and the alleged attack.  *See, e.g.*, *Bumpus v. Watts*, 448 F. App'x 3, 7 (11th Cir. 2011) (concluding the plaintiff "alleged temporal proximity given the short amount of time between his [grievance] and the alleged retaliatory actions"); *Stallworth v. Tyson*, 578 F. App'x 948, 951 (11th Cir. 2014) (ruling that "temporal proximity" can be a factor "that weighs in favor of a causal relationship").

Moreover, while Plaintiff does not explicitly allege in his Amended Complaint that Defendant Watson made contemporaneous statements to him on the day of the attack about his grievance writing, in the grievance Plaintiff filed on March 3, 2022, in which he reported the attack, he said that Defendant Watson told him he should "stop writing grievances."  (*See* Doc. 1-1 at 19).  Accepting as true that Defendant Watson warned Plaintiff during the alleged attack to stop writing grievances, Plaintiff plausibly alleges a

8

causal connection between the protected speech and the alleged adverse action such that his retaliation claim against Defendant Watson may proceed at this juncture.

As to the claim against Defendant Bailey, Plaintiff alleges that Defendant Bailey "had a motive of retaliating" against him because Plaintiff sued Bailey in state court in 2021.  (*See* Doc. 35 at 12).  But Plaintiff does not allege Defendant Bailey referenced the lawsuit before, during, or after the alleged attack on March 3, 2022.  (*See id.* at 13–14).  The lack of temporal proximity between the protected speech and alleged adverse action and the lack of any contemporaneous statement by Defendant Bailey that his attack was motivated by Plaintiff's lawsuit suggest a lack of causation.  Without more, a retaliatory motive by Defendant Bailey is speculative or hypothetical, especially given Plaintiff suggests that Defendant Watson ordered or orchestrated the attack.  (*Id.* at 14).  Accordingly, Plaintiff's retaliation claim against Defendant Bailey will be dismissed.

### D.  Requests for Relief

Plaintiff seeks, in part, "imprisonment of all officials involved" in the alleged attacks and punitive damages.  (*Id.* at 12).  Defendants contend that Plaintiff is entitled to neither.  (*See* Doc. 41 at 1; Doc. 54 at 1).

First, this Court cannot initiate a criminal investigation into alleged unlawful actions by prison staff.  *See Billings v. Allen*, Civil No. 7:14-CV-052, 2014 WL 1621782, at *4 (M.D. Ga. Apr. 22, 2014) ("The United States District Courts do not have jurisdiction to institute criminal proceedings or the authority to order state or federal law enforcement agencies or prosecutors to initiate investigations or prosecutions."); *Stoll v. Martin*, No. 3:06CV180, 2006 WL 2024387, at *3 (N.D. Fla. July 17, 2006) ("This court cannot direct that a federal prosecution occur; authority to investigate and initiate criminal complaints

9

rests exclusively with federal prosecutors."). Accordingly, Plaintiff's request that criminal charges be brought against the Defendants who allegedly attacked him will be dismissed.

Second, the Court finds Defendants' argument that punitive damages are statutorily barred under the under the Prison Litigation Reform Act unpersuasive for reasons already articulated by this Court. *See, e.g.*, Doc. 107, Case No. 3:21-cv-832-BJD-MCR; Doc. 85, Case No. 3:22-cv-449-MMH-LLL; Doc. 16, Case No. 3:23-cv-211-MMH-LLL.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motions to Dismiss (Doc. Nos. 41, 54) are **GRANTED in part** and **DENIED in part**. The Motions are **GRANTED** only to the extent that the following claims and requests for relief are dismissed:

    a. Plaintiff's state law official-capacity claims against all Defendants;

    b. Plaintiff's § 1983 official-capacity claims against all Defendants;

    c. Plaintiff's deliberate indifference claim against Defendant Lamb;

    d. Plaintiff's retaliation claim against Defendant Bailey; and

    e. Plaintiff's requests for a stay-away order and the filing of criminal charges against Defendants.

2. The **Clerk** shall terminate Defendant Lamb as a party to this action.

3. The remaining Defendants shall answer the Amended Complaint (Doc. 35) within **twenty days** of the date of this Order.

4. The **Clerk** shall update docket to reflect the proper spelling of Defendant Crow's last name (currently spelled "Crew") and Defendant Parker's last name (currently spelled "Parkers").

10

**DONE AND ORDERED** in Jacksonville, Florida, on July 14, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-6

c:    Marvin Pace
      Counsel of Record